FILED '08 DEC 10 13:52 USDC-LAE



# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| ISRAEL ANTONIO-MORALES, JUAN HERNANDEZ-HERNANDEZ, PRISCILIANO ANTONIO-HERNANDEZ, ISRAEL HERNANDEZ-ANTONIO, PEDRO HERNANDEZ-ANTONIO, EZEQUIEL MORALES-MARTINEZ, DAMIAN MARTINEZ-RUBIO, REYNALDO REYES-RESENDIZ, J. JESUS MARTINEZ-HERNANDEZ, ELEAZAR HERNANDEZ-ANTONIO, ROGELIO MORALES-CANDELARIA, MARCOS SABINO ANTONIO-ANTONIO, ERASTO MORALES-HERNANDEZ, GAUDENCIO ANTONIO-DOMINGUEZ, on behalf of themselves and all others similarly situated, | PLAINTIFFS<br><br>**08-5105**<br>**SECT D MAG 2**<br>Civil Action No. ___<br><br>**COLLECTIVE ACTION** |
| vs. | |
| BIMBO'S BEST PRODUCE, INC. and CHARLES "BIMBO" RELAN, individually and d/b/a BIMBO'S BEST PRODUCE. | DEFENDANTS |

## PLAINTIFFS' ORIGINAL COMPLAINT

### PRELIMINARY STATEMENT

1. This action is brought by temporary H-2A guestworkers who were trafficked into the United States from Mexico and subjected to forced labor in the strawberry

Fee____35C____
Process_____
X  Dktd_____
___ CtRmDep_____
___ Doc. No_____

1

fields of Defendants Bimbo's Best Produce, Inc. and Charles Relan in Amite, Louisiana.

2. Upon arrival at the strawberry plantation, Defendant Charles Relan, the owner and operator of Bimbo's, subjected the guestworkers to a scheme of psychological coercion, threats of serious harm, and threatened abuse of the legal process to maintain control over them and force them to continue laboring in his strawberry fields. Recognizing that the cruelty of these conditions would drive guestworkers to seek to escape, Relan illegally confiscated their passports and visas.

3. In addition to holding their passports and visas, Relan exploited his physical power and control and took advantage of the guestworkers' geographic, linguistic, and cultural isolation. The guestworkers feared for their physical safety as Relan fired his shotgun over their heads, shot and killed a dog near the fields while guestworkers harvested, sprayed the guestworkers with pesticides, and physically assaulted at least one worker. Relan also threatened the guestworkers with unlawful arrest, eviction, and deportation and paid them less than the federal minimum wage.

4. Relan took advantage of the rules of the H-2A guestworker program—which renders guestworkers completely dependent on their sponsoring employer for legal status, employment, and housing—to further coerce and threaten the guestworkers.

5. The guestworkers were increasingly terrified and trapped in a situation of forced labor. They had no choice but to continue working at Relan's strawberry plantation, even though they wanted to escape. Finally, when members of

2

African-American and immigrant communities came forward to protect the guestworkers, the guestworkers escaped the slave-like conditions of Defendant's strawberry plantation, and the guestworkers courageously reported Relan's activity to the appropriate local and federal law enforcement authorities.

6. The guestworkers seek a declaration that their rights have been violated and an award of damages for Defendants' unlawful conduct, including violations of the federal Trafficking Victims Protection Act, ("TVPA"), the Fair Labor Standards Act ("FLSA"), and the guestworkers' H-2A employment contracts. The guestworkers seek this relief to make them whole for damages they have suffered and to ensure that they and other H-2A guestworkers will not be subjected by the Defendants to such illegal conduct in the future.

## JURISDICTION

7. This Court has jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. § 216(b), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce).

8. This Court has jurisdiction over Plaintiffs' TVPA claims pursuant to 18 U.S.C. § 1595(a), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1337 (actions arising under Acts of Congress regulating commerce).

9. The Court has supplemental jurisdiction over Plaintiffs' causes of action based on state law pursuant to 28 U.S.C. § 1367 because these claims are so related to the federal claims that they form part of the same case or controversy.

## VENUE

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## PARTIES

11. Israel Antonio-Morales, Juan Hernandez-Hernandez, Prisciliano Antonio-Hernandez, Israel Hernandez-Antonio, Pedro Hernandez-Antonio, Ezequiel Morales-Martinez, Damian Martinez-Rubio, Reynaldo Reyes-Resendiz, J. Jesus Martinez-Hernandez, Eleazar Hernandez-Antonio, Rogelio Morales-Candelaria, Marcos Sabino Antonio-Antonio, Erasto Morales-Hernandez, and Gaudencio Antonio-Dominguez ("Plaintiffs") are each citizens of Mexico who at all times relevant to this action were lawfully admitted to the United States on temporary work visas pursuant to 8 U.S.C. § 1101(a)(15)(H)(ii)(a).

12. Pursuant to 29 U.S.C. § 216(b), Plaintiffs seek to bring their FLSA claims as a collective action on behalf of all similarly situated workers H-2A workers employed by Defendants.

13. Defendant Charles "Bimbo" Relan is a natural person residing in Tangipahoa Parish, Louisiana.

14. Defendant Bimbo's Best Produce, Inc. is a corporation organized under the laws of Florida.

15. The state of Florida dissolved the corporate status of Defendant Bimbo's Best Produce, Inc. in 2005 for failure to comply with the requirements of Florida law.

16. Defendant Bimbo's Best Produce, Inc. is a corporation registered as a foreign corporation under the laws of Louisiana.

17. The state of Louisiana revoked the corporate status of Defendant Bimbo's Best Produce, Inc. in 2006.

18. After the revocation of its corporate status, Charles Relan continued to do business as Bimbo's Best Produce.

19. Upon information and belief, Defendants Bimbo's Best Produce, Inc. and Bimbo's Best Produce had their principal place of business in Tangipahoa Parish, Louisiana.

20. In 2006, H-2A guestworkers sued Defendant Charles Relan and Defendant Bimbo's Best Produce, Inc. in the United States District Court for the Eastern District of Louisiana claiming violations of the Fair Labor Standards Act and Louisiana contract law in 2005 and previous years.

## FACTS

21. For the 2005-2006 season, Defendants obtained H-2A visas from the U.S. government for Plaintiff Rogelio Morales-Candelaria and approximately 35 other Mexican workers to work on Defendants' strawberry farm in Amite, Louisiana.

22. For the 2006-2007 season, Defendants obtained H-2A visas from the U.S. government for Plaintiffs Erasto Morales-Hernandez, Prisciliano Antonio-Hernandez, and approximately 35 other Mexican workers to work on Defendants' strawberry farm in Amite, Louisiana.

23. For the 2007-2008 season, Defendants obtained H-2A visas from the U.S. government for all Plaintiffs and approximately 25 other Mexican workers to work on Defendants' strawberry farm in Amite, Louisiana.

24. Plaintiffs are indigent migrant workers whose livelihoods depend on their ability to enter the United States to work lawfully.

25. Plaintiffs speak little or no English. Many are indigenous and speak Nahuatl as their first language, speaking and understanding only basic Spanish.

26. Upon Plaintiffs' arrival in Amite, Louisiana from Mexico to work in Defendants' strawberry fields each year, Defendants confiscated Plaintiffs' passports and H-2A visas.

27. Defendant Charles Relan regularly berated and insulted Plaintiffs and other H-2A workers as they labored in his strawberry fields. On occasion, Defendant Charles Relan yelled at H-2A workers who stood up from bent positions over strawberry plants to stretch their backs, telling them he did not want to see them standing.

28. On or about December 2007 or January 2008, Defendant Charles Relan became furious with Plaintiff Reynaldo Reyes-Resendiz, screaming at him and accusing him of weeding strawberry plants incorrectly. While Plaintiff Reyes-Resendiz attempted to continue working, Defendant Charles Relan shoved Plaintiff Reyes-Resendiz. This incident caused Plaintiff Reyes-Resendiz and other H-2A workers, including Plaintiffs, to feel even more fearful of Defendant Relan and to believe that Defendant Charles Relan was capable of and willing to inflict harm on them.

29. On or about January 2008, as Plaintiff Israel Hernandez-Antonio labored in Defendants' strawberry fields, Defendant Charles Relan became enraged with Plaintiff Hernandez-Antonio. Defendant Charles Relan hovered over Plaintiff Hernandez-Antonio as Plaintiff Hernandez-Antonio crouched over strawberry

plants picking strawberries, berating him, threatening him, and cursing at him. Defendant Charles Relan also threatened to throw strawberries at Plaintiff Hernandez-Antonio.

30. Defendant Charles Relan regularly carried a gun in the fields, and on occasion used it to shoot above Plaintiffs' heads while Plaintiffs labored in the strawberry fields.

31. During the 2007-2008 season, Defendants' H-2A employees, including Plaintiffs, befriended a dog who, on information and belief, belonged to a neighbor of Defendant Charles Relan. The dog frequently came to visit Defendants' H-2A employees while they worked in the fields.

32. On or about January 2008, Defendant Charles Relan used his gun to shoot and kill this dog in the vicinity of Plaintiffs as they worked in Defendants' strawberry fields.

33. Plaintiffs reasonably interpreted the killing of the dog as a threatening gesture and were increasingly afraid of Defendant Charles Relan.

34. In 2006, 2007, and 2008, Defendants intentionally applied pesticides on Defendants' strawberry fields in the direct vicinity of Plaintiffs as Plaintiffs worked in those fields. As a result, the spray and vapors from these pesticides came into contact with Plaintiffs' skin and mouths.

35. The spray and vapors from the pesticides applied by Defendants in Plaintiffs' vicinity caused physical discomfort to Plaintiffs and constituted a harmful and offensive contact to Plaintiffs.

36. During 2006, 2007, and 2008, Defendants paid Plaintiffs and other H-2A workers for some work they performed in Defendants' strawberry fields according to a piece rate scheme.

37. The earnings of Plaintiffs at times totaled less than the amount due under the applicable adverse effect wage rate, 20 C.F.R. § 655.102(b)(9).

38. At times, the piece rate earnings of Plaintiffs and other H-2A workers were less than the amount due under the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a).

39. Defendants failed to supplement the piece rate earnings of Plaintiffs as required by their employment contract, 20 C.F.R. § 655.102(b)(9)(ii)(A), so as to ensure that each worker's pay period earnings were at least equal to the adverse effect wage rate.

40. Defendants failed to supplement the piece rate earnings of Plaintiffs and other H-2A workers as required by the minimum wage provisions of the FLSA, 29 U.S.C. § 206(a), 29 C.F.R. § 776.5, so as to ensure that these workers' pay period earnings were at least equal to the minimum wage required by the FLSA. Defendants did not pay Plaintiffs and the other H-2A workers at least the minimum wage for each hour worked in each workweek during which the workers were employed.

41. Defendants failed to make and maintain pay records as required by 29 U.S.C. § 211(c).

42. Defendant Charles Relan regularly threatened Plaintiffs and other H-2A workers that if they did not continue working for Defendants, or did not work according to

Defendants' specifications, Plaintiffs would be deported back to Mexico, reported to immigration and/or other law enforcement authorities, and/or prohibited from ever returning to the United States.

43. During the course of Plaintiffs' employment in 2006, 2007, and 2008, Defendants failed to comply with material terms and conditions of employment offered to Plaintiffs in the clearance orders submitted to the U.S. Department of Labor.

44. The terms of work offered to Plaintiffs included, *inter alia*, (a) the terms offered in the "clearance orders" submitted by Defendants to the U.S. Department of Labor to obtain permission to import foreign workers; (b) the terms of work set forth in the federal regulations governing Plaintiffs' visas, 20 C.F.R. § 655.102; (c) the length of the contract as set forth on each worker's H-2A visa; and (d) the assurances set forth in 20 C.F.R. § 655.103.

45. Specifically, Plaintiffs' work contracts offered, *inter alia*, the following terms of work:

   i. Wages equal to the higher of the minimum wage, the adverse effect wage rate, or the prevailing wage rate;

   ii. Reimbursement of the costs of transportation and subsistence from the point of recruitment to the place of work upon completion of 50% of the contract period;

   iii. Return transportation and subsistence from the place of work to the point of recruitment upon completion of the contract;

   iv. Work or wages for 3/4 of the period running from the first workday to the contract's end date;

    v.      Adequate written pay statements on each payday;

    vi.     Payment of all visa, transportation, and recruitment expenses as required by Mexican Federal Labor Law, Title II, Chapter I, Article 28;

    vii.    An assurance that Defendants would not intimidate, threaten, restrain, coerce, blacklist, discharge, and/or in any manner discriminate against any person who with just cause asserts rights or protections afforded under the H-2A program; and

    viii.   An assurance that Defendants would comply with applicable federal, state, and local employment-related laws and regulations, including employment-related health and safety laws.

46.    During the course of Plaintiffs' employment, Defendants:

    i.      Failed to pay wages equal to the higher of the minimum wage, the adverse effect wage rate, or the prevailing wage rate for each of the hours that Plaintiffs worked;

    ii.     Failed to reimburse transportation and subsistence costs from the point of recruitment to the place of work upon completion of 50% of the contract period;

    iii.    Failed to provide work or wages for 3/4 of the period running from the first workday to the contract's end date;

    iv.    Failed to provide adequate written pay statements on each payday;

    v.      Failed to pay visa, transportation, and recruitment expenses;

    vi.     Failed to provide a copy of the work contract;

    vii.    Intimidated, threatened, restrained, coerced, blacklisted, discharged, and/or discriminated against Plaintiffs who asserted rights and protections afforded under the H-2A program; and

    viii.    Failed to comply with applicable federal, state, and local employment-related laws and regulations, including the federal Worker Protection Standard, 40 C.F.R. Part 170, and Louisiana Human Trafficking statute, La. Rev. Stat. Ann. § 14:46.2.

47. Although the conditions of Plaintiffs' employment with Defendants were intolerable and unlawful, Plaintiffs feared leaving the farm without their passports and visas.

48. Plaintiffs reasonably feared that, without their passports and visas, they could be arrested and detained by immigration or other law enforcement authorities.

49. On several occasions between September 2007 and February 2008, some H-2A workers, including Plaintiff Juan Hernandez-Hernandez, requested that Defendants return their passports and immigration documents. Defendants refused, informing H-2A workers, including Plaintiffs, that these immigration documents and passports would be kept by Defendants until Plaintiffs completed their work in the 2007-2008 season.

50. In the violent atmosphere of the strawberry farm, without their identification and immigration documents, Plaintiffs reasonably believed that Defendant Charles Relan's actions and statements were threatening and felt forced to continue working for Defendants despite terrible working conditions.

51. On February 14, 2008, with the support of community allies, Plaintiffs collectively demanded that Defendant Charles Relan return their passports and complained about Defendant Charles Relan's violations of the H-2A contract and federal law.

52. On February 14, 2008, Plaintiffs provided information in good faith to the Tangipahoa Parish Sheriff's Office, the Federal Bureau of Investigation, and the Department of Justice, Civil Rights Division, Criminal Section, Anti-Trafficking Unit regarding Defendant Charles Relan's violations of federal and state laws against labor trafficking.

53. Plaintiffs also later sought the protection of the Tangipahoa Parish Sheriff's Office to block Bimbo's subsequent threats and attempts to evict them without legal process.

54. While working for Defendants in 2006, 2007, and 2008, Plaintiffs and the other similarly situated Mexican H-2A workers were engaged in the production of goods for commerce as that phrase is used in the FLSA.

55. At all times relevant to this action, Plaintiffs and the other similarly situated Mexican H-2A workers were employed by Defendants within the meaning of 29 U.S.C. § 203(g).

56. At all times relevant to this action, each Plaintiff and each similarly situated H-2A worker was an "employee" of Defendants within the meaning of 29 U.S.C. § 203(e).

57. At all times relevant to this action, Defendants were the employers of each Plaintiff and each similarly situated H-2A worker within the meaning of 29 U.S.C. § 203(d).

58. To get to the farm in Louisiana where they worked for Defendants each season, Plaintiffs and other similarly situated Mexican H-2A workers were required to pay various fees and expenses, including but not limited to point-of-hire transportation fees, visa fees, hiring expenses and daily subsistence during travel from their hometowns in Mexico to Louisiana.

59. As a matter of practice and policy each season, Defendants did not reimburse Plaintiffs and the other similarly situated Mexican workers for the point-of-hire transportation fees, visa fees, and hiring expenses incurred by Plaintiffs described in paragraph 58 during the first workweek of each worker's respective year of work for Defendants.

60. As a matter of practice and policy each season, Defendants did not take the expenses set forth in paragraph 58 into account in determining whether Plaintiffs and their other H-2A workers earned at least the minimum wage or the adverse effect wage rate during the first workweek.

61. The point-of-hire transportation, visa, and hiring expenses described in paragraph 58 were primarily for the benefit of Defendants.

62. The point-of-hire transportation, visa, and hiring expenses set forth in paragraph 58 operated as de facto deductions from the wages of Plaintiffs and other H-2A workers, causing them to earn less than the minimum wage for each hour worked during their first workweek.

63. Plaintiffs could not obtain these jobs without paying these point-of-hire transportation, visa, and hiring expenses.

64. Defendants' application of pesticides in the vicinity of Plaintiffs while they labored in Defendants' strawberry fields constituted a violation of the Worker Protection Standard, 40 C.F.R. §§ 170.110, 170.112.

65. In violation of the Worker Protection Standard, 40 C.F.R. § 170.130, Defendants did not ensure that each Plaintiff who entered an area in which pesticides had been applied within the past 30 days had received pesticide safety training within the past five years.

66. Defendants failed to display posted pesticide safety information in a location accessible to workers regarding pesticides that had been applied to Defendants' strawberry fields within the past 30 days in violation of the Worker Protection Standard, 40 C.F.R. § 170.135.

67. All conditions precedent to this action have been satisfied.

68. All actions and omissions alleged herein were undertaken by Defendants either directly and/or through their agents.

69. Defendants were on notice of their obligations to H-2A employees under the FLSA, and Defendants' failure to pay Plaintiffs and other similarly situated H-2A workers the minimum wage was willful.

## FIRST CAUSE OF ACTION
## TRAFFICKING VICTIMS PROTECTION ACT— TRAFFICKING
## NAMED PLAINTIFFS

70. This Count sets forth a claim for compensatory and punitive damages for Defendants' violations of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1590. This claim is brought only on behalf of the named Plaintiffs.

71. 18 U.S.C. § 1590 provides that, "recruiting, harboring, transporting, providing, or obtaining by any means any person for labor or services in violation of laws prohibiting slavery, involuntary servitude, debt bondage, or forced labor" in violation of the laws prohibiting trafficking, slavery, and peonage is unlawful.

72. In 2006, 2007, and 2008, Defendant violated 18 U.S.C. § 1592 by removing, confiscating, or possessing Plaintiffs' passports and other immigration documents in the course of and with the intent to cause a violation of 18 U.S.C. § 1590.

73. Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages and reasonable attorney's fees for Defendants' violation of 18 U.S.C. § 1590.

## SECOND CAUSE OF ACTION
## TRAFFICKING VICTIMS PROTECTION ACT—FORCED LABOR
## NAMED PLAINTIFFS

74. This Count sets forth a claim for compensatory and punitive damages for Defendants' violations of the TVPA, 18 U.S.C. § 1589. This claim is brought only on behalf of the named Plaintiffs.

75. 18 U.S.C. § 1589 provides that it is unlawful to "obtain the labor or services of a person—(1) by threats of serious harm to, or physical restraint against, that person or another person; (2) by means of any scheme, plan, or pattern intended to cause the person to believe that, if the person did not perform such labor or services,

that person or another person would suffer serious harm or physical restraint; or (3) by means of the abuse or threatened abuse o flaw or the legal process."

76. In 2007 and 2008, Defendants subjected Plaintiffs to forced labor in violation of 18 U.S.C. § 1589.

77. Defendants knowingly attempted to and did threaten Plaintiffs with serious harm in order to obtain the labor and services of Plaintiffs in violation of 18 U.S.C. § 1589(1).

78. Defendants knowingly attempted to and did obtain the labor and services of Plaintiffs in violation of 18 U.S.C. § 1589(2) using a scheme, plan, or pattern which, in the totality of the circumstances, was intended to coerce and did coerce Plaintiffs and other class members to believe that they would suffer serious harm if they were to leave the employ of Defendants.

79. Defendants threatened Plaintiffs with deportation and deceived Plaintiffs about the terms of their visas in a manner that constitutes an abuse of the legal process under 18 U.S.C. § 1589(3).

80. Pursuant to 18 U.S.C. § 1595, Plaintiffs are entitled to recover damages and reasonable attorney's fees for Defendants' wrongful conduct.

### THIRD CAUSE OF ACTION:
### FLSA—MINIMUM WAGE
### COLLECTIVE ACTION

81. This count sets forth a claim for declaratory relief and damages for the Defendants' violations of the minimum wage and overtime provisions of the Fair Labor Standards Act. This count is brought by Plaintiffs on behalf of themselves and all other similarly situated workers, consisting of those individuals admitted

as H-2A guestworkers who were employed by Defendants on their strawberry fields from December 2005to the present.

82. Pursuant to 29 U.S.C. § 216(b), each Plaintiff has consented in writing to be a party Plaintiff in this FLSA action. Their written consents are attached to this complaint. The 14 Plaintiffs named herein are the representative Plaintiffs under 29 U.S.C. § 216(b).

83. Defendants violated the rights of Plaintiffs and other similarly situated workers by failing to pay each worker the applicable minimum wage for every compensable hour of labor performed in a workweek, in violation of 29 U.S.C. § 206(a).

84. The violations of the FLSA resulted, in part, from Defendants' failure to reimburse Plaintiffs and other similarly situated workers for expenses primarily benefiting the Defendants, prior to the first week of work, as described herein. When these expenses were deducted from Plaintiffs' and other similarly situated H-2A workers' first week's pay, they brought their earnings below the applicable minimum wages for the first workweek.

85. The Defendants' failures to pay the Plaintiffs and others similarly situated their federally mandated minimum wages were willful violations of the FLSA within the meaning of 29 U.S.C. § 255(a).

86. As a result of Defendants' violations of the FLSA set forth in this count, Plaintiffs and other similarly situated worker are entitled to recover the amount of their unpaid minimum wages and an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b).

## FOURTH CAUSE OF ACTION:
## CONTRACT
## NAMED PLAINTIFFS

87. Defendants breached Plaintiffs' work contracts in 2006, 2007, and 2008 for which Plaintiffs are entitled to relief under the law of the State of Louisiana. This claim is brought only on behalf of the named Plaintiffs.

## FIFTH CAUSE OF ACTION:
## BATTERY
## NAMED PLAINTIFFS

88. Defendants intentionally inflicted a harmful or offensive contact upon Plaintiffs by repeatedly spraying them with pesticides as they worked in the fields in 2006, 2007, and 2008, in violation of the law of the State of Louisiana. This claim is brought only on behalf of the named Plaintiffs.

89. As a result, Plaintiffs suffered damages, including but not limited to, mental distress.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that, upon trial of this action, this Court enter an order:

    a. Allowing this case to proceed as a FLSA collective action on behalf of similarly situated H-2A workers employed by Defendants and authorizing Plaintiffs to send notice to such workers of their right to opt-into this action pursuant to 29 U.S.C. § 216(b);

    b. Declaring that Defendants willfully violated the minimum wage provisions of the FLSA as set forth in Count Three;

    c. Awarding declaratory relief;

    d. Awarding compensatory damages;

   e. Awarding punitive damages;

   f. Awarding liquidated damages as authorized by the FLSA, 29 U.S.C. § 216;

   g. Awarding prevailing party costs, including attorney's fees for the services of counsel with the New Orleans' Workers Center for Racial Justice only;

and

   h. Granting such further relief as is just and equitable.

Respectfully submitted this 10th day of December 2008,


_____
Jennifer J. Rosenbaum, Trial Attorney
La. Bar No. 31946
New Orleans Workers' Center for Racial Justice
803 Baronne St.
New Orleans, LA 70113
Telephone: (615) 432-0152
jjrosenbaum@gmail.com


_____
Spring Miller
Tenn. Bar No. 026485
*Pro Hac Vice Motion Pending*
Southern Migrant Legal Services
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd.
Ste. 135
Nashville, TN 37217
Telephone: (615) 750-1200
smiller@trla.org


_____
Stacie Jonas
Tenn. Bar No. 027334
*Pro Hac Vice Motion Pending*
Southern Migrant Legal Services
A Project of Texas RioGrande Legal Aid, Inc.
311 Plus Park Blvd.
Ste. 135
Nashville, TN 37217
Telephone: (615) 750-1200
sjonas@trla.org


COUNSEL FOR PLAINTIFFS